<em>Ordered accordingly.</em>

### HARRY MARTIN & others *vs.* WILLIAM C. FRANCKE & others.

·Suffolk.    March 22, 1917. — May 26, 1917.

Present: RUGG, C. J., BRALEY, DE COURCY, CROSBY, & PIERCE, JJ.

*Labor Union. Malicious Interference. Evidence,* Relevancy. *Equity Jurisdiction,* Plaintiff must come into court with clean hands.

Where a master, to whom has been referred a suit in equity, by an employer and two employees against the officers and members of a labor union which was a rival to a labor union to which the employee plaintiffs belonged, to enjoin the defendants from interfering with the plaintiffs' business and employment, found that the defendants by means of banners displayed on streets sought to boycott the employer plaintiff's business because he refused to discharge the employee plaintiffs and employ members of the defendants' union, the defendants excepted to the report on the ground that the master refused to hear evidence offered by the defendants "that the plaintiffs, their agents and employees, addressed profane and obscene language and vile epithets in the public streets to the defendants when said defendants were driving by the . . . [plaintiffs' place of business] . . . in their automobile" displaying the placards objected to. The defendants contended that the evidence should have been admitted because it would have tended to show that the conduct of the plaintiffs was such as to show that they were not entitled to equitable relief. *Held,* that the exception must be overruled, because, in order to make the evidence admissible, the substance at least of the language alleged to have been used should have been stated.

In the same suit it appeared from the master's report that one of the banners alleged to have been displayed wrongfully bore a legend: "Union Men Notice: The . . . [plaintiffs' place of business] . . . is Unfair" to the defendants' organization. The plaintiffs introduced evidence, which was uncontradicted, tending to show that the usual and ordinary meaning and significance of the word "unfair" among labor men was practically the same as that of the word

"scab" among labor men, and the master made such a finding. The defendants excepted. *Held,* that the exception must be overruled, because the finding, in so far as it was material to any issue involved at the hearing, was warranted by the evidence, which the defendants had introduced no evidence to contradict or control.

The master in the above suit refused to grant a request of the defendants for a statement in his report that at the hearing he found that one of the plaintiffs, while testifying to a material point, committed perjury. The defendants filed an exception to the report based on an objection to such refusal and also moved that the report be recommitted for the inclusion of such a statement. The exception was overruled and the motion was denied. The defendants appealed. The record did not show any such finding by the master at the hearing nor state the testimony alleged to be perjured nor the point alleged to be material. *Held,* that the exception must be overruled and the appeal dismissed, because there was nothing to show that the refusal of the master to comply with the defendants' request was prejudicial to any substantial rights of the defendants.

BILL IN EQUITY, filed in the Superior Court on August 9, 1916, by Raymond W. Gammon and Theresa Harkins, proprietors of a moving picture theatre in Boston known as the Apollo Theatre, and Harry Martin and Leo Wellbrook, employees in that theatre, against the president, vice president, treasurer, secretary and business agent and several members of a voluntary organization, called the "Moving Picture Operators Protective Union of Boston. I. A. T. S. E. Local 182," affiliated with the American Federation of Labor, seeking to restrain the defendants from unlawfully interfering with the plaintiffs' business and occupation.

The suit was referred to a master. Material facts found by the master are described in the opinion.

The defendants filed exceptions to the report based on the following objections:

"1. The defendants object to the master's report in that at the hearing before said master, the defendants offered proof that the plaintiffs, their agent and employees, addressed profane and obscene language and vile epithets in the public streets to the defendants when said defendants were driving by the Apollo Theatre in their automobile as described in said report, and that the master refused to hear such proof and ruled such evidence inadmissible. . . .

"2. The defendants further object to that portion of the master's report . . . which reads as follows: 'On evidence introduced by the complainants and which was uncontradicted, I find

that the usual and ordinary meaning and significance of the word "unfair" among labor men is practically the same as that of the word "scab" among labor men.'

"3. The defendants object because the master found that one of the plaintiffs when testifying upon a material point committed perjury and because he has not included such finding in his report."

The record nowhere contained any specific description of the "profane and obscene language and vile epithets" referred to in the first objection, nor any statement that the master, as stated in the third objection, "found that one of the plaintiffs when testifying upon a material point committed perjury," nor any description of the alleged perjured testimony or of the alleged "material point."

After a hearing by *Jenney*, J., by his order an interlocutory decree was entered overruling the defendants' exceptions to the master's report and confirming the report. The defendants then moved for a recommittal of the report and that the master "be ordered to file a supplementary report therein setting forth the fact that he found that one of the plaintiffs committed perjury at the hearing in this case before him and that . . . the evidence relating thereto be included in said supplementary report." The motion was denied by *Lawton*, J., and the defendants appealed from such denial.

A final decree then was entered by order of *Jenney*, J., restraining the defendants and the officers, members, agents and attorneys of their union "from interfering and combining or attempting to interfere with the employment by the plaintiffs, Raymond W. Gammon and Theresa Harkins, of the plaintiffs Harry Martin and Leo Wellbrook, by representing or causing to be represented in express or implied terms to said Gammon and said Harkins, or either of them, that they, the said Gammon and the said Harkins, or either of them, will suffer or are likely to suffer loss or trouble in their business from employing or continuing to employ said Martin and said Wellbrook, or either of them; and from displaying any banners, signs or cards setting forth directly or indirectly that the Apollo Theatre or its owners, said Gammon and said Harkins, are in any way unfair to the American Federation of Labor, or that they or either of them refuse to employ members of said American Federation of Labor."

The defendants appealed from the final decree.

The case was submitted on briefs.

*F. W. Mansfield & E. R. Mansfield,* for the defendants.

*J. Isaacs & I. Isaacs,* for the plaintiffs.

CROSBY, J. This case arose out of a controversy between two labor organizations known respectively as the Knights of Labor and the American Federation of Labor.

The plaintiffs Martin and Wellbrook are moving picture operators, and are in the employ of the other two plaintiffs, Gammon and Harkins, who are proprietors of a moving picture theatre in Boston. The case was referred to a master who has found that the plaintiffs Martin and Wellbrook are members in good standing of the Knights of Labor, an incorporated labor organization; and that the defendants, with the exception of Rotman and Fox, are officers and members of a local organization composed of moving picture operators which is associated with the American Federation of Labor.

The master further found that the defendants Francke and Burke called upon the plaintiff Gammon and requested him to discharge the plaintiffs Martin and Wellbrook and employ operators who were members of the local organization and affiliated with the American Federation of Labor. This Gammon refused to do; whereupon the defendant Francke stated that unless his request was complied with he would boycott the business of the theatre.

Thereafter the defendant Rotman, as a result of a conversation with some of the officers and members of the local union of which the other defendants were members, carried a banner along the streets in the vicinity of the theatre, upon which the following words appeared: "Union men attention! The management of the Appollo Theatre refuses to employ members of the American Federation of Labor." A few days later the defendants at different times carried in an automobile along the streets a large banner inscribed as follows: "Union Men Notice The Appollo Theatre is Unfair to the American Federation of Labor." The master finds that "the purpose of the defendants in carrying these banners was to cause, if possible, members of the American Federation of Labor and the public to refrain from purchasing tickets of admission to the Apollo Theatre," that it "was the intention of

the defendants in doing the acts hereinbefore described to compel the discharge of the plaintiffs Martin and Wellbrook by the other two plaintiffs, or to cause the plaintiffs Martin and Wellbrook to join the American Federation of Labor, but they were unsuccessful." It was admitted at the hearing before the master that there had been no diminution in the attendance at the theatre due to the acts of the defendants or any of them.

A final decree has been entered in the Superior Court enjoining the defendants from interfering with rights of the plaintiffs respectively; the only questions presented by the appeal arise from three exceptions to the master's report.

The first exception is based upon an objection to the refusal of the master to hear evidence offered by the defendants "that the plaintiffs, their agent and employees, addressed profane and obscene language and vile epithets in the public streets to the defendants when said defendants were driving by the Apollo Theatre in their automobile as described in said report," and to the ruling that such evidence was inadmissible. If, as the defendants contend, the conduct of the plaintiffs was such that they were not entitled to equitable relief, the defendants were required to state the substance at least of the language used. For the defendants merely to characterize it as "profane and obscene" and "vile epithets" was not sufficient to enable the master to pass upon the question of its admissibility; the exception to its exclusion must be overruled.

The second exception is to the finding of the master upon uncontradicted evidence "that the usual and ordinary meaning and significance of the word 'unfair' among labor men is practically the same as that of the word 'scab' among labor men." If and in so far as the meaning of the word "unfair" was material to any issue involved at the hearing, it was a question to be decided upon the evidence. If the defendants believed that the word "unfair" did not have the significance of the word "scab" they were entitled to introduce evidence to the contrary; if they did not see fit to do so we cannot say that the finding of the master, which was in accordance with the uncontradicted evidence, was not warranted. The exception to this finding cannot be sustained.

The third exception is to the failure of the master to embody in his report a recital to the effect that at the hearing before him

he found that one of the plaintiffs while testifying to a material point committed perjury. This exception must be overruled. It was the duty of the master to pass upon the credibility of the witness who he found had committed perjury at the hearing, and give his testimony such weight as he deemed it to be entitled, or to disregard it altogether. There is nothing to show that the failure of the master to include a finding in his report to the effect that the witness in question had committed perjury, was prejudicial to any substantial rights of the defendants.

*Decree affirmed with costs.*