321 So.2d 690

In re Willodean Frost HARRIS

v.

NATIONAL TRUCK SERVICE, a corporation, and DeKalb Trucking Company, a corp., et al.

Ex parte DeKALB TRUCKING COMPANY.

Civ. 560.

Court of Civil Appeals of Alabama.

Sept. 24, 1975.

Rehearing Denied Oct. 22, 1975.

Jack Livingston and Ronald A. Drummond, Scottsboro, for petitioners.

Traylor, Baker & McGee, Fort Payne, for respondent.

**352**

BRADLEY, Judge.

This is a workmen's compensation case. Respondent is the widow of Joseph Harris, a deceased employee of petitioner, DeKalb Trucking Co., Inc., a corporation. The petitioner defended the claim in the trial court on the premise that respondent's deceased husband was killed while employed by a "common carrier doing business in interstate commerce while engaged in interstate commerce" and was not entitled to workmen's compensation benefits. Title 26, Section 263, Code of Alabama 1940, as Recompiled 1958. The trial court found that Joseph Harris, at the time of the accident resulting in his death, was not employed by a common carrier and was, therefore, entitled to workmen's compensation benefits.

Review of that judgment is sought in this court by writ of certiorari as provided by law.

The facts as found by the trial court show that Joseph Harris was employed by DeKalb Trucking Company, Inc., a corporation (hereinafter referred to as DeKalb Trucking Co.) as a truck driver. Around the first of June 1971 Harris, while acting as an employee of DeKalb Trucking Company, drove a truck loaded with processed chickens to Iowa. The chickens were unloaded and he proceeded to Waseca, Minnesota where, after his truck had been leased to Refrigerated Transport Company (hereafter referred to as Refrigerated) he undertook to take a load of frozen pies to Doraville, Georgia. In the vicinity of Jasper, Tennessee, Harris was involved in an accident that resulted in his death.

At the time the accident occurred, it is undisputed that Refrigerated was a common carrier. There is considerable dispute as to whether DeKalb Trucking, at the time of Harris' death, was a common carrier.

The evidence shows that the trip to Iowa entailed the transportation of processed chickens. These were agricultural products and exempt from I. C. C. regulation. The evidence is also undisputed that DeKalb Trucking was not certificated by the I. C. C. or Alabama Public Service Commission as a common carrier.

The lease agreement between DeKalb Trucking and Refrigerated provided that both the driver and tractor-trailer belonging to DeKalb Trucking were leased to Refrigerated for the specific trip mentioned above; however that same lease agreement provided that the driver was to remain as the employee of DeKalb Trucking. Mr. Harris was paid, both during the time he was hauling to Iowa for DeKalb Trucking and from Minnesota to Georgia for Refrigerated, by DeKalb Trucking, a percentage of the revenue derived by DeKalb Trucking from the particular trip undertaken.

The premiums for workmen's compensation insurance were deducted by DeKalb Trucking from the commissions due to Joseph Harris. In effect, Harris paid for his own workmen's compensation insurance.

The trial court found as a fact that DeKalb Trucking was not a common carrier within the meaning of Title 26, Sec-

tion 263, *supra*. Section 263 provides in part as follows:

"Articles 1 and 2 of this chapter shall not be construed or held to apply to any common carrier doing an interstate business while engaged in interstate commerce, . . ."

As has been said many times before by appellate courts in this state, on certiorari to review the judgment of a trial court in a workmen's compensation case, the reviewing court looks to see if there is any evidence in the record to support the findings of the trial court. *Birson v. Decatur Transfer & Storage, Inc.*, 271 Ala. 240, 122 So.2d 917. In the case at bar the trial court found that DeKalb Trucking was not a common carrier and, consequently, did not fall within the purview of the provisions of Section 263, *supra*.

Petitioner says, however, that the evidence conclusively shows that it was a common carrier and thereby exempt from the provisions of the workmen's compensation law. We are cited to the case of *Birson v. Decatur Transfer & Storage, Inc.*, *supra*, as being controlling authority for this proposition.

The facts in the cited case and the facts in the case at bar are similar but there is one significant difference. In the cited case it was undisputed that the Decatur Transfer & Storage, Inc. was a common carrier; whereas in the case at bar the status of DeKalb Trucking as a common carrier is the central dispute. Consequently we do not believe that *Birson, supra,* is apt authority for concluding that DeKalb Trucking is or is not a common carrier.

The evidence in the case at bar is overwhelmingly to the effect that petitioner did none of those things which by statute or case law are required of common carriers. Petitioner held no certificates of convenience and necessity from either the I. C. C. or Public Service Commission; it did not adhere to regular schedules and routes; it did not offer its hauling services to the common public generally, but instead entered into special contracts to haul "exempt" goods. Hence we conclude that the trial court's finding that petitioner is not a common carrier is well supported by the evidence. The assignment of error questioning this aspect of the trial court's judgment is without merit.

Petitioner also suggests that the trial court erred when it awarded the benefits to respondent in a lump sum under Title 26, Section 279(C)(9), Code of Alabama 1940, as Recompiled 1958, for the reason that, at the time the cause of action accrued, i. e., the time the injury occurred, that provision of the Code had not been enacted, and to make the award in this manner is an impairment of the obligation of contract as prohibited by Article 1, Section 22 of the Alabama Constitution of 1901.

Title 26, Section 279(C)(9) came into being when several provisions of the Alabama Workmen's Compensation law were amended by a 1973 Act of the legislature. Prior to the adoption of this amendment, lump-sum awards were controlled by Title 26, Section 299, which required commutation to present value based on a discount factor of six percent of all lump-sum settlements. The 1973 Act virtually eliminated the commutation requirement, and the award in the present case did not provide for commutation. Our sole concern here is with that portion of Section 279(C)(9), which by its terms has retrospective application. The pertinent portion reads as follows:

". . . In cases pending in payment at the time this Act becomes law [September 17, 1973] the injured employee or his estate may petition a court of competent jurisdiction and the court may order the employer to pay the amount due the employee or his estate within thirty (30) days from the date of said order if the court determines that moneys due the employee or his estate shall be paid in a

lump sum. The payments shall not be commuted."

In the opinion of this court, the above quoted portion of Section 279(C)(9), as applied to the facts of this case, is an impairment of existing contract obligations and violates the Alabama Constitution.

 It is a controlling feature that workmen's compensation is of a contractual nature. Alabama has adopted the majority rule that the legislature is free to change the provisions of a compensation law up until the time of injury. However, because the employer and employee have implicitly contracted to abide by the compensation scheme in effect at the moment of injury, any attempt to amend the compensation schedule after the injurious accident can have no bearing on the award given, and if such retrospective application is given the amendment, then an unconstitutional impairment of contract obligations occurs. *Tennessee Coal & Iron Division, U. S. Steel Corp. v. Hubbert*, 268 Ala. 674, 110 So.2d 260; *Owens v. Ward*, 49 Ala. App. 293, 271 So.2d 251. The impairment which occurs in the present case is obvious and substantial. At oral argument petitioner cited statistics showing that if commutation to present value is no longer allowed, the employer-insurer must pay an additional $900.00 or more to satisfy a $20,000 compensation award. "Present value" (or "present worth" as it is designated in some statutes) has been defined as "a sum which if paid on the date of the verdict would be a just cash equivalent of the sum total of such lost future earnings" as the court awards. *Littman v. Bell Telephone Co. of Pennsylvania*, 315 Pa. 370, 172 A. 687.

 Under the pre-amendment commutation provision, approximately $19,100 would be deemed the present value of an award of $50 per week for 400 weeks, the award given here. After the amendment there would be no commutation to present value, so a lump-sum payment of $20,000 would be required to satisfy the same award. But, based on these figures, we can estimate that a $20,000 lump sum would be the just cash equivalent of approximately $52.50 per week for 400 weeks. Therefore, the effect of the amendment is to provide a small windfall to the beneficiary and impose an unanticipated burden on the employer. This is at variance with the compensation schedule in effect in 1971, the time of the injury present case, and impairs the employer's contract obligations established by that schedule.

Respondent urges us to view the 1973 amendment not as a change in the compensation schedule, but as an alteration in the form of the remedy and thus not an impairment of contract. We must reject this argument. First, it is significant that Section 279(C)(9) appears in a section of the Code headed, "Schedule of compensation —Following is schedule of compensation." Thus there is compelling evidence that the legislature was considering changes in the compensation schedule when it adopted the amendment.

Second, there is the specific nature of the amendment. Rather than providing for a general change in the judgment interest rate, the retrospective portion of the amendment limits its application to a very few cases, indicating that specific types of claims were singled out for this change. This is circumstantial evidence that the legislature was thinking of the amount of relief—compensation-type of thinking— rather than of the technicalities of enforcing remedies.

Third, the elimination of commutation makes the award of a lump sum worth more money in the actuarial sense than a periodic weekly award. As such, the amendment provides to the employee a clear financial incentive to choose the lump-sum form of payment independent from considerations of his welfare and needs for stable income over a period of years. This is a basic change in the philosophy of workmen's compensation, which has always been based on the philosophy of acting as a

surrogate for the lost weekly earnings of the injured employee. Such a basic philosophical change is too profound to be subsumed under the heading of a mere adjustment in the prescribed remedy.

For these reasons, the retrospective application of Section 279(C)(9) in this case must be held unconstitutional, although we do not rule out the possibility that the legislature could adopt broad reforms in commutation rates with retroactive effect if it made careful findings of fact and clearly indicated that its intent was remedial change. Such is not the case here.

Read in context, certain language in the case of *Thompson-Hayward Chemical Company v. Peterson* (1975), 56 Ala.App. 432, 322 So.2d 723, to the effect that Section 279(C)(9) has been held constitutional is obviously limited to the issues presented in that and previous opinions on the subject. It is contrary to the plain meaning of that language to rely on it as a blanket warrant of constitutionality in every possible aspect.

■ Because the provisions of Section 279 are severable, the provision for retrospective application can be declared unconstitutional without invalidating the remainder. The non-retrospective portions of Section 279(C)(9) clearly do not impair any invested contract obligations involved in this case.

We are also of the opinion that the trial court abused its discretion by entering this decree for lump-sum payment even though petitioner was afforded no opportunity to present evidence in opposition to that aspect of the decree. In *B. F. Goodrich Company v. Butler* (1975), 56 Ala.App. 635, 324 So.2d 776, this court held that Section 279(C)(9) did not mandate, *proprio vigore,* formal notice and hearing subsequent to the employee's requisite filing of petition for lump-sum payment. However, *B. F. Goodrich* indicates that the trial court's decision on the petition could be set aside for abuse of discretion.

■ There is no basis for an exercise of discretion by the trial court unless some evidence has been presented, or at least both parties have had the opportunity to present evidence, on the matters over which discretion is exercised. *Cohen v. Young,* 127 F.2d 721 (6th Cir. 1942). Whereas the trial court in *B. F. Goodrich* could take into account the employer's failure to object to a proposed decree of which he had actual notice, there is nothing similar in the record of the present case to form the basis for a lump-sum award. In these circumstances, entry of a lump-sum payment when the employer has been denied the opportunity to present any evidence that might weigh against such an award is arbitrary and amounts to a reversible abuse of discretion by the trial court.

Such a denial clearly occurred when petitioner was not given notice and hearing on respondent's request for the lump-sum order as provided for in Rules 6(e), 6(d) and 7(b) of the Alabama Rules of Civil Procedure. The record indicates that judgment, including the lump-sum award, was rendered on March 10, 1975. It was on that same day that respondent filed its petition for lump-sum payment. A copy of respondent's petition was received by petitioner's counsel on March 11, 1975, one day after the decree was entered. A copy of the judgment was mailed to petitioner's counsel on March 21, 1975. Petitioner had no time in which to prepare objections to lump-sum payment. Nonetheless, because we have already held the award of lump-sum payment to be constitutionally infirm, it would not be possible for respondent to change the result we reach here merely by curing any procedural deficiencies.

In view of the above, the trial court properly entered judgment for the plaintiff but erred in allowing a lump-sum payment without commutation. For this reason we remand the case to the trial court for the purpose of determining the benefits that

**356**

should be paid to the respondent according to law.

Affirmed in part; reversed and remanded in part.

HOLMES, J., concurs.

WRIGHT, P. J., concurs specially.

WRIGHT, Presiding Judge (concurring specially):

I concur in the opinion of the majority but feel it necessary to explain that in doing so, I do not depart from the decision of *Steele v. Aetna Casualty & Surety Co.*, 46 Ala.App. 705, 248 So.2d 745.

It is to be noted that the employer in *Steele* was a common carrier engaged in interstate commerce. As is pointed out in the opinion of the court in this case, the employer, DeKalb, is not a common carrier, either intra or interstate, but a contract carrier of exempt commodities. It is true that at the time of his death, the employee was engaged in interstate commerce as a lease driver for a common carrier, Refrigerated Transport Company. There is little question but that while so engaged he was subject to the rules and regulations of the Interstate Commerce Commission. He and the truck owned by his employer, DeKalb, were operating under the permit of Refrigerated. Refrigerated had direction and control of the driver and the vehicle while leased; however, such lease did not cause DeKalb to become a common carrier engaged in interstate commerce.

Section 263 of Title 26 as it appeared in 1971 excluded common carriers doing an interstate business while engaged in interstate commerce from coming under the Workmen's Compensation Act. It is my opinion, applying the provisions of the Act liberally as required, DeKalb was not such an employer as was intended to be excluded from the benefits of workmen's compensation. The case of *Birson v. Decatur Transfer & Storage Co., Inc.*, 271 Ala. 240, 122 So.2d 917 is distinguishable for the same reason hereinabove stated.